UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| RANDY SOULE,<br><br>　　　　　　　　　Appellant,<br>　v.<br><br>HIGH ROCK HOLDING, LLC and<br>GRANITE INVESTMENT GROUP, LLC,<br>Nevada limited liability companies,<br><br>　　　　　　　　　Appellees. | Case No. 3:12-cv-00671-MMD-VPC<br><br>ORDER |

I.  **SUMMARY**

This appeal involves the question of whether reliance or reasonable expectation of payment from an alter ego at the time of the transaction is a necessary requirement for application of the alter ego doctrine under Nevada law. The Court finds that such a showing is not required. Consequently, it was an abuse of discretion for the bankruptcy court to deny a Rule 56(d) request as said denial was premised on the finding that Plaintiff could not make a showing of reliance or reasonable expectation.

This appeal by Appellant Randy Soule challenges the decision of the United States Bankruptcy Court for the District of Nevada to grant summary judgment and deny his Rule 56(d) request. (Dkt. no. 16.)[1] The Motion for Partial Summary Judgment

---

[1] Appellant's Opening Brief and Excerpts of Record ("EOR") were initially filed as dkt. nos. 11 and 12. Appellant then filed a Notice of Corrected Image complete with Appellant's Opening Brief and EOR. For the purposes of this Order, the Court will only cite to dkt. no. 16 when referring to Appellant's Opening Brief and the relevant EOR tabs.

("Motion") at issue was filed in the bankruptcy court by Appellees High Rock Holding, LLC ("High Rock") and Granite Investment Group, LLC ("Granite"). For the reasons set out below, the bankruptcy court's Order is reversed and this action is remanded to the bankruptcy court for further proceedings consistent with this Order.

## II. BACKGROUND

The following factual background is derived largely from the findings of fact entered by the bankruptcy court with respect to Appellees' Motion for Partial Summary Judgment and the Complaint. Appellant Soule does not contest the following facts.

Soule was approached by Ron Weddell to fund a loan of $1,000,000 on or about July 31, 2006. (EOR Tab 26 at 277 ¶ 7.) The loan was for Weddell and a number of his companies, though no specific companies were named in the Complaint and the checks were made out to Weddell personally. (Id.) On February 6, 2007, Soule extended the loan and funded an additional $200,000 with checks once again made out to Weddell personally. (Id.) Weddell funneled $900,000 to High Rock and $200,000 to Granite, but Soule did not loan High Rock or Granite any money directly. (Id.) In October 2007, Weddell provided Soule with title to various vehicles in partial payment of the loan. (Id.) Soule loaned an additional $250,000 to Weddell personally and in November 2007, Weddell assigned to Soule collateral in the amount of $1,648,000 secured by notes and deeds of trust. (Id.)

Sometime in October 2007, Weddell and his business partner, Michael Stewart, agreed to submit various disputes involving their various companies to arbitration. (EOR Tab 1 ¶ 16.) Following a hearing, the arbitration panel determined that Weddell and Stewart each own half of the membership interest in High Rock and Granite. (Id. ¶ 18.) The arbitration panel's decision ("Panel Decision") stated that High Rock and Granite were obligated to repay Soule $1,100,000 "in the respective amounts the loan proceeds were utilized." (Id.; EOR Tab 26 at 277 ¶ 7.) The Panel Decision makes no mention of joint and several liability. (Id.) Soule learned of the Panel Decision sometime after it was confirmed by the First Judicial District Court of the State of Nevada, Carson City, on or

about May 18, 2009. (EOR Tab 1 ¶¶ 21, 25.) High Rock filed bankruptcy on or about November 8, 2009. (*Id.* ¶ 26.)

Soule sought partial summary judgment and the parties stipulated to the entry of partial summary judgment in Soule's favor. (EOR Tab 26 at 275–76 ¶ 4.) In its order granting certification of partial summary judgment, the bankruptcy court fixed the minimum amount owed by High Rock at $900,000 and the minimum amount owed by Granite at $200,000. (*Id.* at 279 ¶ 10.) The partial summary judgment order, however, reserved for trial the issue of whether High Rock and Granite could be held jointly and severally liable for the principal amount of $1,100,000 through an application of the alter ego doctrine. (*Id.* at 276-77 ¶¶ 5-6.)

On July 26, 2012, about two months before trial, High Rock and Granite moved for partial summary judgment based in part on this alter ego claim. (EOR Tab 17 at 140.) In his opposition, Soule argued that High Rock and Granite failed to meet their burden of supporting their summary judgment argument with admissible evidence. (*Id.* at 159–61.) Soule's opposition also asked the bankruptcy court to deny summary judgment pursuant to Fed. R. Civ. P. 56(d) in order to allow Soule more time to process discovery material. (*Id.* at 161.) High Rock and Granite filed their reply on September 4, 2012. (EOR Tab 23 at 219.)

The bankruptcy court vacated the trial date of September 27, 2012, and held a hearing on that date instead to address the Motion. (Dkt. no. 16 at 6, 7.) At the hearing, the bankruptcy court found that partial summary judgment should be granted because, based on its review of the allegations in the Complaint, the undisputed facts and the relevant case law, the three elements of alter ego liability could not be met. (*See* EOR Tab 25 at 225–51.) The bankruptcy court specifically found that "there is no genuine issue of material fact that there was no reliance, nor was there any reasonable expectation by Mr. Soule that anyone other than Mr. Weddell would repay him." (*Id.* at 269:11-14.) The bankruptcy court further found, as to Soule's Rule 56(d) request, that "all the discovery in the world is not necessary regarding Mr. Soule's reliance or his

reasonable expectations because he's the only one that would know that." (*Id.* at 249:3-5; 255.) Such reliance or reasonable expectation, the bankruptcy court noted, "are necessary elements" to establish alter ego liability. (*Id.* at 269:1-5.) Counsel for High Rock and Granite were instructed to prepare findings of fact and conclusions of law consistent with the bankruptcy court's oral findings and conclusions. (*Id.* at 270.) The bankruptcy court entered its Order granting partial summary judgment in favor of High Rock and Granite on December 6, 2012, upon submission of such proposed findings of facts and conclusions of law ("Findings"). (EOR Tabs 26, 27.)

## III.  DISCUSSION

Soule raises several issues on appeal pertaining to the bankruptcy court's determination that there are no genuine issues of material fact for trial and that Soule should not be granted leave to amend. (Dkt. no. 16 at 1-2.) However, the Court's resolution of the issue addressed in this Order renders it unnecessary to consider the other issues raised.

The issue resolved in this Order is the determination that a showing of reliance or reasonable expectation, as required by the bankruptcy court, is not a necessary element for application of the alter ego doctrine in Nevada. Soule asked the bankruptcy court to deny the Motion pursuant to Rule 56(d) in order to allow Soule more time to process discovery material. (EOR Tab 20 at 161.) The bankruptcy court found there must be "reliance or reasonable expectation at the time of transaction" (*id.* at 270:12-14) and that such reliance, reasonable expectation, or both, were "necessary elements" to apply the alter ego doctrine. (EOR Tab 25 at 269:1-3.) The bankruptcy court observed it was problematic that Soule did not "rely or have any reasonable expectation that [High Rock] would pay an obligation of [Granite], or that [Granite] would pay an obligation of [High Rock]" at the time of the loan, as it appeared to Soule the debt was Weddell's alone. (EOR Tab 25 at 269:18-21.) The bankruptcy court found that "all the discovery in the world is not necessary regarding Mr. Soule's reliance or his reasonable expectations because he's the only one that would know that." (*Id.* at 249:3-5; 255; EOR Tab 26 at

283 ¶ 10.) Based on this finding, the bankruptcy court granted summary judgment and denied the opportunity to conduct discovery. Soule asks this Court to consider whether the bankruptcy court "erred as a matter of law in denying Soule's request that [High Rock and Granite's] Motion for Partial Summary Judgment be denied pursuant to [Rule 56(d)]." (Dkt. no. 16 at 1.)

The Court finds the bankruptcy court should have granted Soule's Rule 56(d) request to permit Soule sufficient time to complete and review discovery on the third element of Soule's alter ego claim. The Court will therefore first address the standard under Rule 56(d).

### A.  Legal Standard

Rule 56(d) states that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition [to a motion for summary judgment], the court may defer considering the motion or deny it[.]" Fed. R. Civ. P. 56(d)(1). It thus "provides a device for litigants to avoid summary judgment when they have not had sufficient time to develop affirmative evidence." *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1000 (9th Cir. 2002).[2]

A district court reviews a bankruptcy court's denial of a Rule 56(d) request for abuse of discretion. *In re Slatkin*, 310 B.R. 740, 751 (C.D. Cal. 2004); see also *Burlington N. Santa Fe R. Co. v. Assiniboine and Sioux Tribes of Fort Peck Reservation*, 323 F.3d 767, 773 (9th Cir. 2003). Generally speaking, in reviewing for abuse of discretion, the Ninth Circuit's test is to first determine whether the bankruptcy court identified the correct legal standard, then "determine whether its application of the correct legal standard [to the facts] was (1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." *In re Taylor*, 599 F.3d 880, 887 (9th Cir. 2010) (internal quotation marks and citation omitted). "If the

---

[2] Rule 56 subdivision (d) "carries forward without substantial change the provisions of former subdivision (f)." Fed. R. Civ. P. 56, Advisory Committee Notes 2010 Amendments. Earlier cases therefore refer to subdivision (f) as opposed to subdivision (d).

bankruptcy court did not identify the correct legal rule, or its application of the correct legal standard to the facts was illogical, implausible, or without support in inferences that may be drawn from the facts in the record, then the bankruptcy court has abused its discretion." *Id.* at 887-88 (citation omitted).

Pursuant to Rule 56(d), a court "should continue a summary judgment motion upon a good faith showing by affidavit that the continuance is needed to obtain facts essential to preclude summary judgment." See *McCormick v. Fund Am. Cos., Inc.*, 26 F.3d 869, 885 (9th Cir. 1994). Rule 56(d) requests should be granted freely where a party has not had a "realistic opportunity" to pursue discovery relating to its theory of the case. *Burlington*, 323 F.3d at 773 (citations omitted). "[T]he denial of a [Rule 56(d)] application is generally disfavored where the party opposing summary judgment makes (a) a timely application which (b) specifically identifies (c) relevant information, (d) where there is some basis for believing that the information sought actually exists." *VISA Int'l Serv. Ass'n v. Bankcard Holders of Am.*, 784 F.2d 1472, 1475 (9th Cir. 1986). The party making a Rule 56(d) request must be able to show that it diligently pursued its previous discovery opportunities and show "how allowing additional discovery would have precluded summary judgment." *Qualls v. Blue Cross of Cal., Inc.*, 22 F.3d 839, 844 (9th Cir. 1994)).

**B.    Analysis**

In order to determine whether the bankruptcy court abused its discretion in denying Soule's Rule 56(d) request, the Court must consider whether the bankruptcy court identified the correct legal standard for application of the alter ego doctrine under Nevada law.

The relevant legal standard, established by the Supreme Court of Nevada in *Frank McCleary Cattle Company v. Sewell*, 317 P.2d 957 (Nev. 1957), overruled on other grounds by *Callie v. Bowling*, 160 P.3d 878 (Nev. 2007), does not explicitly mention a reliance or reasonable expectation requirement. Rather, Nevada courts apply the alter ego doctrine where the following requirements are met: "(1) [t]he corporation

must be influenced and governed by the person asserted to be its alter ego[;] (2) [t]here must be such unity of interest and ownership that one is inseparable from the other; and (3) [t]he facts must be such that adherence to the fiction of separate entity would, under the circumstances, sanction a fraud or promote injustice." *McCleary*, 317 P.2d at 959. "It is not necessary that the plaintiff prove actual fraud. It is enough if the recognition of the two entities as separate would result in an injustice." *Id.* at 959 (internal quotation marks and citations omitted).

At the hearing, the bankruptcy court found that a reliance element is "subsumed in the third requirement of *McCleary*[.]" (EOR Tab 25 at 256:16-18.) As articulated in the Findings, the bankruptcy court determined that "pursuant to Nevada law, the application of the third element of alter ego doctrine in Nevada requires reasonable reliance by the complaining creditor on the debtor's conduct which would indicate the absence of corporate form or the assumption of liability by the person or entity controlling an openly visible corporation or limited liability company." (EOR Tab 26 at 276 ¶ 5.) The bankruptcy court found that, in failing to meet the reliance requirement, Soule "had no reasonable expectation that High Rock or Granite would pay the loans [Soule] extended to Weddell at the time the loans were made" and there was "no justifiable reliance by [Soule] on payment from [High Rock and Granite] at the time the loans were made . . . ." (*Id.* at 277 ¶ 6.)

The bankruptcy court misstates the alter ego standard. Reliance or reasonable expectation of payment from an alter ego at the time of the transaction is not a necessary requirement for application of the alter ego doctrine in Nevada.

The court in *McCleary* does not conduct any analysis or draw any specific conclusions about reliance or reasonable expectation. In *McCleary*, plaintiffs brought an action against a timber company to recover a debt obligation based on an agreement they made with the timber company. *McCleary*, 317 P.2d at 958-59. Prior to revocation of the timber company's charter, the timber company transferred all of its assets to a cattle company for tax purposes. *Id.* at 959. The timber company and the cattle company

7

had the same president and stockholders. *Id.* The cattle company had paid the timber company's debt obligation to plaintiffs in the past and bore the cost of plaintiffs' litigation against the timber company. *Id.* After judgment was entered in favor of plaintiffs against the timber company, a special order made the assets of the cattle company available to satisfy the judgment. *Id.* at 958. The cattle company appealed and the Supreme Court of Nevada affirmed, determining that, under the circumstances, "the trial court was justified in disregarding the corporate fiction and holding the cattle company to be the alter ego of the timber company." *Id.* at 959. The court noted that a separate action was not required against the cattle company as plaintiffs were not seeking to add a party to the old litigation or recover from a third party. *Id.* The court found it was appropriate to regard the two corporations as identical for the purposes of executing the judgment against the timber company. *Id.*[3]

In *McCleary*, there is no suggestion that plaintiffs relied on or reasonably expected, at the time of their agreement with the timber company, that the cattle company would pay the timber company's obligations. While the court noted that the cattle company did pay one of the timber company's obligations to plaintiffs, the cattle company apparently did so *after* plaintiffs entered into the relevant agreement with the timber company. *See id.* at 958-59. Further, the fact of the cattle company's payment of a past obligation appears to be one of many considerations made by the court in reaching its decision. It is by no means treated by the court as a necessary element.

The bankruptcy court's finding of a reliance or reasonable expectation requirement is primarily based on two bankruptcy court cases in the District of Nevada, *In re Twin Lakes Village, Inc.*, 2 B.R. 532 (Bankr. D. Nev. 1980) and *In re Giampietro*, 317 B.R. 841 (Bankr. D. Nev. 2004). (*See* EOR Tab 25 at 243-44, 246-48, 269.)

///

---

[3]*McCleary* thus establishes that one corporate entity can be the alter ego of another corporate entity pursuant to Nevada's alter ego doctrine. *McCleary*, 317 P.2d at 959.

In analyzing Supreme Court of Nevada precedent as to the third element in the *McCleary* analysis, the court in *Twin Lakes* found that "Nevada courts have focussed [sic] on the element of reliance, or more particularly, on 'reasonable reliance' by the complaining creditor upon debtor conduct which would indicate either the absence of a corporate form or the assumption of liability by a person or entity controlling an openly visible corporation." *Twin Lakes*, 2 B.R. at 542. The cases cited in support of this finding, and *Twin Lakes* itself, suggest that such "reasonable reliance" is one factor that can be considered in analyzing the third element, but it is not necessarily a *requirement*. For example, the most recent case cited was *Lipshie v. Tracy Investment Company*, 566 P.2d 819 (Nev. 1977). In that case, the court found that the third element was not met because "[t]here is no evidence that a fraud or deception would be sanctioned." *Id.* at 823. In doing so, the court took note of the creditor and controlling entity's expectations as to liability for the debt,[4] but also found it significant that, although the debtor was undercapitalized, there was no evidence that the alleged alter ego undercapitalized the debtor to frustrate payment of its obligation to the creditor. *Id.* The court therefore concluded that the creditor failed to show that the alleged alter ego "used the nomenclature of another corporation, namely, [the debtor], as a facade to insulate itself from responsibility on the claimed indebtedness." *Id.* at 824. This analysis, in addition to considering the creditor's expectations, thus considers whether the debtor and controlling entity engaged in business activities unjustly orchestrated to avoid a debt obligation. There is no indication in *Lipshie* that reliance is required in every case or that it is any more important than other factors considered in the *McCleary* analysis, including the debtor and controlling entity's business activities, the effect of those activities on

///

///

///

---

[4] The court in *Lipshie* does not use the term "reliance" in its analysis.

payment of the debt obligation,[5] and the controlling entity's intent to avoid paying the debt.

As the *Lipshie* court considered more than a creditor's reliance in analyzing the third element of *McCleary*, so did the court in *Twin Lakes*. Like the court in *Lipshie*, the *Twin Lakes* court found it significant that there was no evidence of intent to avoid payment of the relevant debt obligations. *See Twin Lakes*, 2 B.R. at 543. The court also looked at whether there was evidence of fraud or illegality. *See id.* Thus, *Twin Lakes* establishes that a creditor's reliance on debtor conduct indicating "the absence of a corporate form or the assumption of liability" by a controlling entity is but one significant factor that courts might consider in analyzing the third element of *McCleary*, along with other important factors such as fraud, illegality and a debtor or controlling entity's attempts to avoid the relevant debt obligation. It does not, however, state that a finding of reliance at the time of agreement is *required* to satisfy the third element.

Looking at the issue twenty-four years later, the *Giampietro* court agreed with the analysis of *Twin Lakes*. *Giampietro*, 317 B.R. at 853 (finding that the *Twin Lakes* court's "reading of the then-extant cases was sound then, and is sound now"). The *Giampietro* court then analyzed alter ego cases from the Supreme Court of Nevada in the intervening years and narrowed the *Twin Lakes* analysis further, finding that "whether [creditor] has shown that it meets the third requirement of *McCleary* . . . resolves itself into an examination of the [creditor's] reasonable expectations *at the time the parties signed the Agreement.*" *Id.* at 856-57 (emphasis added). The *Giampietro* analysis of the third element of *McCleary* is not, to the Court's knowledge, articulated in any Nevada state court opinion. Indeed cases from the Supreme Court of Nevada indicate that proper analysis is not so narrow or clear-cut.

///

---

[5]This focus on the business activities of the debtor and the alleged alter ego, as well as the effect of these activities on the debtor's ability to pay the debt, will come up frequently as key considerations in the *McCleary* analysis.

For example, in *Polaris Industrial Corporation v. Kaplan*, 747 P.2d 884, 885 (Nev. 1987), Polaris brought an action on a note originally issued by NMS and later assumed by CRI. The note was for wire rack displays that Polaris sold to NMS. *Id.* at 885–86. Polaris asserted that Michael Kaplan, one of two officers and shareholders of NMS and CRI, was an alter ego of NMS and CRI. *Id.* at 885. The trial court found that Polaris had not established alter ego liability. *Id.* at 886. In reviewing the third element of *McCleary*, the Supreme Court of Nevada focused on the business activities of NMS, CRI and its officers. The Supreme Court of Nevada found that the third element was satisfied because Kaplan had been taking money from CRI for personal use without apprising the bookkeeper, and CRI would have been able to pay its debt if these withdrawals had not thinned CRI's capitalization. *Id.* at 887. There was absolutely no indication, per the *Twin Lakes* and *Giampietro* analysis, that Polaris had a justifiable reliance on, or a reasonable expectation of, the absence of NMS and CRI's corporate form or the assumption of liability by Michael Kaplan at the time the note was issued. In fact, despite the existence of the note for roughly one year before the complaint was filed, Polaris apparently never sought to collect from the individual officers or sought guarantees from them personally. The fact of Polaris' reliance on Kaplan seemed hardly relevant to the court's analysis of the third element. The Supreme Court of Nevada determined the third element was satisfied because Kaplan engaged in unjust business activities that negatively affected his company's ability to pay its debt to Polaris.

In *Lorenz v. Beltio, Ltd.*, 963 P.2d 488, 490 (Nev. 1998), Don Loverso leased land from the Gundersons to build a motel. The Gundersons' ownership eventually passed to the Lorenzes. *Id.* Loverso assigned his leasehold interest and David Read became the personal assignee. *Id.* Read eventually entered talks with the Strubles for assignment of the lease and formed a corporation, Beltio, Ltd., to conduct the motel's business. *Id.* The Lorenzes sent a notice of default and notice to quit to Read and terminated the lease, but Read assigned the lease to Beltio, Ltd., which refused to relinquish possession of the property. *Id.* at 491-92. Beltio, Ltd. soon filed for bankruptcy. *Id.* at 490. A trial was held

as to whether Beltio, Ltd. was the alter ego of the Strubles and what damages Beltio, Ltd. owed for its unlawful possession. *Id.* at 492. The trial court found that the corporate veil should not be pierced to hold the Strubles personally liable. *Id.* at 490. The Supreme Court of Nevada disagreed. Regarding the third element of *McCleary*, the court found that failure to apply the alter ego doctrine would result "in an injustice and possibly sanction a fraud." *Id.* at 497-98. The Supreme Court of Nevada found that "[i]f the Strubles are not held personally liable for Beltio, Ltd.'s debt, the Lorenzes will never have a chance to receive the rent or other payments they deserve because Beltio, Ltd. filed for bankruptcy." *Id.* at 498. The court further found that Beltio, Ltd. continued to profit off of the motel even while it failed to pay its debts. *Id.* The Supreme Court of Nevada's analysis thus focused on the unjust business activities of Beltio, Ltd., its alter ego, the Strubles, and how those activities affected Beltio, Ltd.'s ability to pay.

The court in *Lorenz* made no findings about the Lorenzes' reliance on, or reasonable expectations of, payment from the Strubles or the absence of Beltio, Ltd.'s corporate form. In fact, the Lorenzes appear to have been unaware that Read assigned the lease to Beltio, Ltd. The Lorenzes initially filed a complaint in the trial court against Read — and only Read — for declaratory judgment that the lease was terminated and seeking damages for waste on the property and a writ of restitution. *Id.* at 491. However, the Lorenzes filed the complaint after Read assigned the lease to Beltio, Ltd. *Id.* The Strubles and Beltio, Ltd. intervened in the action after filing for bankruptcy. *Id.* at 492. It was only through the summary judgment process that the trial court determined that Beltio, Ltd. never acquired a lawful interest in the lease and thereafter the issues of alter ego and damages for unlawful possession went to trial. *Id.* The Lorenzes' awareness of any debt owed by Beltio, Ltd., therefore, only came out of the legal proceeding itself.

Lastly, in *LFC Marketing Group, Inc. v. Loomis*, 8 P.3d 841, 843 (Nev. 2000), the Loomises obtained a judgment against William and sought to "reverse pierce" the corporate veil to recover from LFC Marketing, a corporation whose sole shareholder and president is William's brother and for which William is vice president. LFC Marketing was

a part of the LFC Real Estate Network, a "consortium of smaller companies" that William is involved with in some way, including serving as president for LFC Communications, for which William's wife is the sole shareholder. *Id.* The Loomises sought to attach a payment from Nevada Land and Resources Company ("NLRC") to LFC Marketing to satisfy William's debt. *Id.* As to the third element of *McCleary*, the court decided reverse piercing was appropriate because "the carefully designed business arrangements between the LFC entities, William and NLRC contributed to the Loomises' inability to collect their judgment." *Id.* at 847. The court's analysis focused on how William structured his business activities to avoid payment of a debt obligation, not on the Loomises' reliance on, or expectation of, payment from LFC Marketing when judgment against William was entered.

Here, Appellees High Rock and Granite appear to recognize that *Lorenz* and *LFC* do not include an element of reliance, arguing instead that "other conduct bordering on fraud was sufficient to satisfy the third leg" in those cases. (Dkt. no. 17 at 23-24.) That may be the case, but the bankruptcy court denied Soule's Rule 56(d) request because he found that justifiable reliance or reasonable expectation were "necessary elements" of the *McCleary* analysis. (EOR Tab 25 at 269:1-3.) The question before this Court is whether that is true. Looking at the case law set out above, the Court finds that reliance on or reasonable expectation of payment from the alter ego at the time of the transaction is not a necessary requirement for applying the alter ego doctrine under Nevada law. Moreover, the *Twin Lakes* factor of "reasonable reliance by the complaining creditor upon debtor conduct which would indicate either the absence of a corporate form or the assumption of liability by a person or entity controlling an openly visible corporation" is but one potential consideration in a *McCleary* analysis.[6] *See Twin Lakes*, 2 B.R. at 542.

---

[6]Appellees assert that the Supreme Court of Nevada made a "clear and unequivocal statement requiring the creditor to show the creditor was looking to relying on the officer as the guarantor of the corporate debt" in *Trident Construction Corp. v. West Electric, Inc.*, 776 P.2d 1239 (Nev. 1989). (Dkt. no. 17 at 21.) The Court finds that *Trident* is not persuasive because the court in that case was not conducting an alter ego
(fn. cont...)

13

Indeed, as demonstrated by the cases discussed above, the Supreme Court of Nevada has been willing to apply the doctrine without finding reliance if there is evidence of fraud, illegality, or unjust business activities designed to evade payment of a debt obligation.

In applying Nevada law, federal courts must respect the stated purpose of the alter ego doctrine, which is to "'do justice' whenever it appears that the protections provided by the corporate form are being abused." See *LFC*, 8 P.3d at 845-46. "There is no litmus test for determining when the corporate fiction should be disregarded; the result depends on the circumstances of each case." *Polaris*, 747 P.2d at 887 (citation omitted). To require, as the bankruptcy court did, "reasonable reliance by the complaining creditor on the debtor's conduct which would indicate the absence of corporate form or the assumption of liability by the person or entity controlling an openly visible corporation or limited liability company" (EOR Tab 26 at 9 ¶ 5), effectively requires the creditor to understand, in some capacity, that the debtor is a sham. Such an understanding is not likely to exist in situations where the corporate form is being abused. In order to "do justice" in these situations, courts cannot adopt such a narrow view of the alter ego doctrine. Doing so could result in the opposite of the doctrine's intended effect, causing courts to overlook an injustice where the debtor or its controlling entity is sophisticated enough to pull a fast one on the creditor and keep secret any indication of the absence of corporate form. The Court's view is consistent with that of the Supreme Court of Nevada, which has shown its willingness to apply the doctrine to a broad range of factual scenarios and not adopt a litmus test.

---

(... fn. cont.)
analysis pursuant to the *McCleary* elements. The question in *Trident* was whether a settlement agreement signed by an individual, without reference to his corporate capacity, was a personal guaranty for that corporation's debt. *Trident*, 776 P.2d at 1242. The issue was one of contract interpretation and, in that context, the court determined that it must be shown by a preponderance of the evidence that the individual intended to be "personally bound" and the creditor "was looking to the officer as the guarantor of the debt." *Id.* The court in *Trident* did not determine that such a showing was required in alter ego cases.

At the hearing, the bankruptcy court recognized that Soule's Rule 56(d) arguments only dealt with "the first two prongs, not the third prong" of the *McCleary* analysis.[7] (EOR Tab 25 at 261:18-19.) The bankruptcy court apparently arrived at this conclusion only through an erroneous application of the third element of *McCleary*, as explained above, finding that "all the discovery in the world is not necessary regarding Mr. Soule's reliance or his reasonable expectations because he's the only one that would know that." (*Id.* at 249:3-5; 255; EOR Tab 26 at 10 ¶ 10.) This application of an incorrect legal standard deprived Soule of the "realistic opportunity" to review and complete discovery. *Burlington*, 323 F.3d at 773. The records reflect that discovery responses, including "voluminous bank records [and] QuickBooks files" that were turned over to Soule's expert for review, were served on Soule one week before his opposition to the Motion was due. (EOR Tab 25 at 263:8-12.) Soule's Rule 56(d) affidavit stated that he anticipated this discovery would yield evidence that recognizing High Rock and Granite as separate entities would result in injustice by shifting the bulk of the liability to High Rock, the bankrupt entity. (EOR Tab 21 ¶ 4.) Although the Court does not decide whether summary judgment is appropriate, the bankruptcy court's granting of summary judgment under these circumstances could have impeded "informed resolution of fact-specific disputes." *See Burlington*, 323 F.3d at 774.

Based on the foregoing, the Court finds that the bankruptcy court abused its discretion in denying Soule's Rule 56(d) request because it applied an incorrect legal standard for the alter ego doctrine under Nevada law. *See Taylor*, 599 F.3d at 887-88.

IV. **CONCLUSION**

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and

---

[7] Based on the records before the Court, it is not clear whether the bankruptcy court made the Rule 56(d) ruling based on the first two *McCleary* elements as well. It appears the bankruptcy court determined that further discovery may defeat summary judgment as to the first and second elements, but the bankruptcy court did not clearly resolve this issue because it found that no discovery could cure the lack of reliance to support the third element.

determines that they do not warrant discussion or reconsideration as they do not affect the outcome of this appeal.

It is therefore ordered that the bankruptcy court's denial of Appellant's request pursuant to Fed. R. Civ. P. 56(d) is reversed. This case is remanded to the bankruptcy court for further proceedings consistent with this opinion.

DATED THIS 30th day of July 2014.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE